Estate of Thomas T. Tasker.    Appeal of Stephen P. M.
Tasker, William H. Tasker and Mary E. Clark, Exec-
utors of Thomas T. Tasker, deceased.

*Promissory notes—Accommodation note—Renewals—Banks and banking.*
A bank cannot recover from the maker of a promissory note, where it
appears that the note was the last of a series of renewals of an original
note which had been made and loaned as an accommodation to the bank.
It cannot be assumed, in the absence of testimony, that if a note is renewed
for a number of times, it never was a loaned note.

*Accommodation note—Renewals—Evidence.*
Where a witness testifies without contradiction that the note in suit was
loaned to the bank without consideration, and the books of the bank are
not produced to show that a consideration passed, the mere fact that the
note was renewed from time to time will not support a finding that the
testimony of the witness was untrue, and thereby permit the bank to re-
cover.

*Banks and banking—Loan of note—Fraud—Evidence.*
The mere fact that a note was loaned to a bank when it was being re-
organized, upon the allegation of the president that it "needed paper,"
does not prove that the note was intended for an unlawful purpose, or
that the maker was assisting to fraudulently deceive the bank examiner,
and that he is thereby estopped from setting up the want of considera-
tion as a defense to the note.

Argued March 31, 1897.   Appeal, No. 76, Jan. T., 1897, by
Stephen P. M. Tasker, from decree of O. C. Phila. Co., Jan. T.,
1894, No. 325, overruling exceptions to adjudication.   Before
STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ.
Reversed.

Exceptions to adjudication.
Thomas T. Tasker died January 27, 1892.   At the audit of his
executors' account before ASHMAN, J., two claims for $5,000
each were presented, one by the clearing house committee, (con-
sisting of George Philler, B. B. Comegys, J. H. Michener, G. M.
Troutman, James V. Watson, H. C. Stroup and Jacob Naylor)
on decedent's promissory note for that amount, dated April 2,
1891, at four months, to the order of Stephen P. M. Tasker,
and the other by B. F. Fisher, Esq., receiver of the Spring
Garden National Bank, on decedent's note for $5,000, dated Jan-

uary 5, 1891, payable May 31, 1891, to the order of Stephen P. M. Tasker. Both notes were indorsed by the payee and both claims were allowed.

The facts and the testimony are sufficiently stated in the opinion of the Supreme Court.

Exceptions to the adjudication were dismissed in an opinion by FERGUSON, J.

*Errors assigned* were in overruling exceptions to adjudication in favor of the last described note.

*John G. Johnson*, with him *John Sparhawk, Jr.*, and *Sheldon Potter*, for appellant.—If the note in question was one of a series, the original of which was given at the solicitation of Francis W. Kennedy, president of the Spring Garden National Bank, for the accommodation of the bank, and without consideration to the maker or indorser, there can be no recovery: Millward-Cliff Cracker Co.'s Est., 161 Pa. 157.

The renewals of the original note do not import a consideration: Royer v. Keystone Nat. Bank, 83 Pa. 248.

A bank may take accommodation paper for its own use: Simons v. Fisher, 55 Fed. Rep. 905.

The discount book produced and offered in evidence in behalf of the bank's claim was not admissible to charge the estate: Meighen v. Bank, 25 Pa. 288; Bank v. Boraef, 1 Rawle, 152.

*H. B. Gill*, with him *John R. Read* and *Silas W. Pettit*, for appellee, cited Evans v. Dravo, 24 Pa. 62; Winten v. Freeman, 102 Pa. 366; Allebach v. Hunsicker, 132 Pa. 349.

OPINION BY MR. JUSTICE GREEN, July 15, 1897:

On the hearing before the auditing judge, Stephen P. M. Tasker, testified as follows: " I was a depositor many years in the Spring Garden Bank. Mr. Kennedy, the president, sent for me and told me they were about to form the bank into a national bank and needed paper. He asked me if I could get two notes from my father for $5,000 each. My father agreed to it and sent two notes at $5,000 each, drawn February 2, 1886, one at four months and one at five months. They were not to be used at all. One of them (presented by Mr. Freedley) is a

renewal of the original one.  So is the note presented by Mr. Stone.  Neither father nor I ever received any consideration for either note."  If the foregoing testimony was true the transaction was a loan by Thomas T. Tasker of his accommodation note to the bank, and the bank could in no possible circumstances be permitted to recover the money on the note for its own use from the maker.  In the case of Simons v. Fisher, Receiver, 55 Fed. Rep. 905, it was said by ACHESON, J., "Now if a bank or its receiver can successfully maintain an action against an innocent maker of a promissory note which came to it by the hands of its own president who, acting in its behalf and as its representative, procured the note for the accommodation of the bank in the course of its regular business, surely it can only be upon fuller proofs than this record discloses that the bank became a bona fide holder of the note for value."  This judgment was affirmed in 28 U. S. Appeals, 95.  The doctrine is too manifestly sound to require argument in its support.  The learned court below disposed of the testimony by saying that the auditing judge had found that the testimony was untrue because the notes were successively renewed during the five years following, and that this was a flat contradiction of the testimony that the notes were borrowed by the bank for temporary use.  That is all that is said by the auditing judge or the court below on this subject.  We are not satisfied with this mode of disposing of either the testimony or the subject.  We do not see that it follows necessarily, and as a matter of course, that if a loaned note is renewed for a number of times, it must be assumed that it never was a loaned note.  There may have been sufficient reasons for continuing the loan of the note, just as in the case of individuals who obtain accommodation indorsements from their friends, and continue to renew the paper in the same way through many successive years.  So this bank may have desired to continue this paper in its original shape, either because they had used it to borrow money upon, or to exhibit it as an apparent asset of the bank.

We cannot know from anything on the record how the real fact is, but it is not all satisfactory to have the positive testimony of a party to the original transaction, and who for aught that appears to the contrary is a perfectly respectable and truthful witness, swept entirely out of the case, and branded as false,

simply by an assumption which may or may not be well founded, and with nothing on the record to sustain it. We cannot but regard it as an extremely suspicious circumstance in the way of such an assumption, that the books of the bank, being in the custody of the receiver, and therefore entirely accessible, were not produced to explain the original transaction. If the note was really discounted for the maker, as a matter of course the proceeds would have been placed to the credit of the maker, and would have been subject to his check, and if he had needed the money, as must naturally be assumed, it would have been drawn out very soon after the discount was obtained. Both the cash account of the bank and the personal account of the maker of the note, would necessarily have shown how this was. Yet, although the note clerk who was connected with the bank for fifteen years was a witness on the stand, and was examined, he gave no testimony on this most important subject. He did give the entries from the discount book for February, 1891, and traced the note back to its immediate predecessor given in September, 1890. But that testimony was of no value as to the real merits of the controversy. The original transaction occurred in February, 1886, and the absolute and uncontradicted testimony of the man who indorsed the first note, fatally challenged the consideration of that note. He swore positively that it was given at the request of the president as an accommodation to the bank, and that neither his father nor he had ever received any consideration for it. If this testimony was untrue, the bank had the most ample and satisfactory means of disproving it in its own possession, and was clearly bound to use those means. No explanation is given of this singular omission, and we are at a loss to understand how any valid reason can be given for it. Assuredly we will not make haste to discredit the positive testimony of a seemingly reputable and truthful witness, who is not contradicted in any respect, and who is not in any manner impeached, by a mere assumption that it is not true, when the bank and its receiver have in their possession the means of proving what the real truth of the transaction was, and fail to use those means. We know of no reason for disbelieving the testimony, and on the present state of the record, we do not disbelieve it, and certainly cannot sanction a decree founded only upon such a disbelief.

It is rather intimated than decided by the auditing judge that, conceding the truth of the testimony of the witness, Tasker, it would tend to establish a fraud on the part of the bank in which Thomas T. Tasker participated, and therefore he could not escape liability by setting up the fraud. The court in banc very properly says nothing upon this subject. The record is utterly lacking to support such a contention. There is no evidence whatever that anything was said to Thomas T. Tasker upon that subject, or that he agreed to do anything of the kind. The witness does not say that it was intended to use the notes to deceive the bank examiner. It is entirely consistent with his testimony that the bank may have desired to use the notes to borrow money, to be used in the organization of a national bank. But it is not necessary to pursue the discussion, for the simple reason that there is no evidence to support the contention, and neither the auditing judge nor the court in banc bases the decree upon it. We are of opinion that the claim of the receiver of the bank is not sustained, and is not entitled to be paid out of the fund in the hands of the accountants.

The decree of the court below is reversed at the cost of the appellee, and the record is remitted with instruction to distribute the estate in accordance with this opinion.