HOUSTON E. & W. T. RY. CO. et al. v. WILKERSON et al. (No. 599.)

(Court of Civil Appeals of Texas. Beaumont. July 12, 1920. Rehearing Denied Oct. 13, 1920.)

1. **Railroads** ⬅328(5)—**Automobilist going 12 miles an hour held negligent.**

An automobilist, who was traveling 12 miles an hour as he went upon a crossing, where he was struck by a passenger train traveling at 18 miles an hour, was negligent as a matter of law, where the view of the crossing was obstructed.

2. **Railroads** ⬅350(32)—**Negligence of automobilist as proximate cause of collision question for jury.**

In an action for the death of an automobilist at a railroad crossing, whether negligence of deceased in driving upon the crossing, the view of which was obstructed, was the proximate cause of the accident, *held* for the jury.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Trial ⬥365(I)—Finding that plaintiff's deceased was negligent not finding that negligence was proximate cause of accident.**

In an action for the death of an automobilist at a railroad crossing, a finding by the jury in answer to a special issue that deceased was negligent, was not a finding that such negligence was the proximate cause of the injury resulting in his death.

**4. Appeal and error ⬥218(2)—Objection to special issue as to contributory negligence held insufficient, in absence of request to group facts.**

Submission of a special issue as to contributory negligence over the defendant's objection that · issue did not apply acts of deceased to the facts as disclosed by the evidence, and permitted jury to speculate, was unavailing on appeal, where defendant did not request special issue grouping the facts relied on to constitute contributory negligence.

**5. Trial ⬥365(I)—Finding that deceased did no act contributing to his injury a finding of no contributory negligence.**

In an action for damages for death, answer of jury in the negative to a special issue, "Do you believe from the evidence that the deceased, W., did any act or failed to do any act that contributed to the injury causing his death?" had the inevitable effect to acquit deceased of contributory negligence.

**6. Trial ⬥358—Judgment cannot be entered upon contradictory answers to special issues.**

If material findings in answer to special issues are contradictory and in conflict with each other, no judgment can be properly entered.

**7. Railroads ⬥352—Findings ·concerning contributory negligence not contradictory.**

An affirmative answer by the jury to a special issue, "Could, or could not, the deceased, as he approached the crossing and when within a distance of not less than 30 feet from the crossing, by .the exercise of ordinary care, have seen or heard the train as it approached the crossing, in time to have stopped his automobile so as to have prevented the accident?" was not in conflict with a negative answer to a special issue, "Do you believe from the evidence that the deceased did any act, or failed to do any act, that contributed to the injury causing his death?"

**8. Railroads ⬥5½, New, vol. 6A Key-No. Series—Road under federal control not liable for negligence.**

A railroad under federal control authorized by Congress is not liable for the death of a person struck at a crossing.

**9. Costs ⬥238(2) — Costs adjudged against successful appellant, where he failed to raise question at trial.**

Where judgment was rendered against both the Director General of Railroads and the railroad, and the trial court's attention was not called to error in rendering judgment against the railroad, on reversal as to the railroad the entire costs of the appeal should be adjudged against the appellants.

Appeal from District Court, Nacogdoches County; L. D. Quinn, Judge.

Suit by Mrs. Ennie Wilkerson, in her own behalf and as next friend of Bernice Wilkerson and others, against Walker D. Hines, Director General of Railroads, and the Houston East & West Texas Railway Company. Judgment for plaintiffs, and defendants appeal. Affirmed as to the Director General and reversed as to the railroad.

Hodges & Greve, of Nacogdoches, for appellants.

McMeans, Garrison & Pollard, of Houston, and A. A. Seale, of Nacogdoches, for appellees.

HIGHTOWER, C. J. Mrs. Ennie Wilkerson, surviving widow of Lee Wilkerson, deceased, filed this suit in her own behalf, and also as next friend of Bernice Wilkerson, Zelma Wilkerson, and Joe Wilkerson, minor children of plaintiff and deceased, against Walker D. Hines, in his capacity as Director General of Railroads, and also against the Houston East & West Texas Railway Company, to recover damages sustained by the plaintiffs on account of the death of said Lee Wilkerson, the husband and father, alleged to have been negligently caused by said defendants. The said Lee Wilkerson, on July 16, 1919, met his death in the town of Nacogdoches, by reason of a collision between a southbound passenger train of the Houston East & West Texas Railway Company and Wilkerson's automobile, which occurred at the crossing of Cox street over said railway track in the town of Nacogdoches. Plaintiffs alleged negligence on the part of the defendants in the following respects:

(1) That the agents and servants of defendants in charge of the train which caused the death of Wilkerson failed to blow the locomotive whistle and to ring the engine bell as the engine approached said crossing.

(2) That the agents and servants in charge of the train negligently failed to keep a lookout for persons traveling on said Cox street and making said crossing, and particularly their failure to keep a lookout to see deceased as he was about to cross.

(3) That defendants negligently failed to provide means of warning travelers on said street by the construction and maintenance of gates, crossing or signal bells or the keeping of a flagman there, as required by the ordinances of the city of Nacogdoches.

(4) That defendants negligently operated said train at an excessive and reckless rate of speed, and at a speed in excess of 6 miles an hour, which was in violation of an ordinance of the city of Nacogdoches, which limited such speed to 6 miles an hour.

(5) That the operatives of the train negligently failed to stop the same in time to avoid the collision which resulted in Wilker-

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

son's death, and that defendants were guilty of negligence in not having brakes with which to check said train of the kind and quality required to have stopped said train before it struck the deceased and the automobile in which he was riding.

(6) That the servants of defendants operating said train were wholly incompetent, and had a total disregard for the life of the traveling public, and particularly the deceased, etc.

The defendant Walker D. Hines, Director General answered by general denial and by a special plea of negligence and contributory negligence upon the part of the deceased, Lee Wilkerson, alleging that deceased was driving, or permitted the driving of, his automobile, at and just before the time of the accident, at a careless, reckless, and dangerously high rate of speed, and that he did not, as he approached the crossing, stop, look, or listen for the approaching train, and that had he so stopped, looked, or listened, and had he had his automobile under control, he could easily have seen the approaching train in time to have stopped the automobile and prevented the accident.

The defendant Houston, East & West Texas Railway Company in its answer interposed a general denial, and also alleged generally negligence and contributory negligence of the deceased, and then further pleaded the assumption or control, by the President of the United States, on December 27, 1917, of all systems of transportation, including railroads, and particularly the defendant's railroad, and the exclusive control and operation thereof by the Director General of Railroads at the time in question, and further specially pleaded general order No. 50, promulgated by the Director General, and especially the provision thereof which provides:

"Actions at law, suits in equity and proceedings in admiralty whenever brought in any court based on contract, binding upon the Director General of Railroads, claim for debt or injury to person, or for loss and damage to property, arising since December 31, 1917, and growing out of the possession, use, control or operation of any railroad or system of transportation by the Director General of Railroads, which action, suit or proceedings, but for federal control, might have been brought against the carrier company, shall be brought against Wm. G. McAdoo, Director General of Railroads, and not otherwise: Provided, however, that this order shall not apply to actions, suits or proceedings for the recovery of fines, penalties and forfeitures."

And said defendant also specially pleaded a further provision reading as follows:

"Pleadings in all actions at law, suits in equity or proceedings in admiralty now pending against any carrier company for a cause of action arising since December 31, 1917, based on a cause of action arising from or out of the operation of any railroad or other carrier, may, on application, be amended by substituting the Director General of Railroads for the carrier company as party defendant, and dismissing the company therefrom."

The case was tried with a jury, whose verdict consisted of answers to special issues in the form of interrogatories, and upon the verdict judgment was rendered in favor of the plaintiffs, against both defendants, for the sum of $15,000, which amount was apportioned between them as the jury found should be done.

The jury, in response to special issues submitted to them, found that no signal of the train, while approaching the Cox street crossing, at the time of the collision, was given, either by the whistle being blown or the bell being rung; that at the time of the collision in question the train was being operated at an excessive rate of speed, to wit, 18 miles per hour; that defendants, at the time of the injury and death of Wilkerson, did not maintain at the crossing on Cox street any gate, bell, or flagman to warn travelers of the approach of trains to the crossing; that the failure of the operatives on the engine to blow the whistle and ring the bell, and the failure on the part of the defendant to maintain at said crossing gates, or bells, or a flagman, and the excessive rate of speed at which said train was traveling, became the proximate cause of Lee Wilkerson's death. No other of the allegations of negligence made by the plaintiffs were submitted for the jury's consideration.

Special issue No. 6 submitted by the court for the jury's consideration, and having reference to the defense of contributory negligence, was as follows:

"Do you believe from the evidence that the deceased, Lee Wilkerson, did any act or failed to do any act that contributed to the injury causing his death?"

To this question the jury answered, "No."

Issue No. 6 was immediately followed by this question, propounded by the court to the jury:

"If you should answer the foregoing question 'No,' then you need not answer question No. 7, but should you answer said question, 'Yes,' then you will answer question No. 7.

"Question No. 7: Did any act or omission of the deceased, Lee Wilkerson, which immediately preceded the injury that resulted in his death, amount to negligence on his part, as that term has been defined to you in this charge?"

There was no answer by the jury to question No. 7.

Immediately following question No. 7, the court submitted for the jury's answer question No. 8, which was as follows:

"If you should answer question No. 7, 'No,' then you need not answer question No. 8, but should you answer said question 'Yes,' then you will answer question No. 8.

"Question No. 8: Do you believe from the evidence that such act or omission on the

part of said Lee Wilkerson was a proximate cause of the injuries received by him?"

There was no answer to this question. In answer to question No. 9, the jury found, in effect, that plaintiffs were entitled to recover $15,000, and stated how it should be apportioned between them.

Upon request of defendants, the court submitted for the consideration of the jury the following special issues:

Special issue A: "At what rate of speed was the automobile running as it approached and was within 30 feet of the main line track of the defendant company?"
To this question the jury answered: "12 miles per hour."

Special issue B: "In what distance could the automobile in which the deceased was driving have been stopped at the rate of speed it was running as it approached the crossing and was within thirty feet of defendants' main line track?"
The jury answered: "20 feet."

Special issue C: "At what distance could a person 30 or 35 feet from the track, see a train approaching the crossing where the accident occurred, from the north?"
The jury answered: "482 feet."

"Special issue D: "At what distance could a person 70 feet from the track see a train approaching the crossing where the accident occurred from the north?"
The jury answered: "125 feet."

Special issue E: "Could, or could not, the deceased, when within a distance of not less than 30 feet from the main line of the defendant company, have seen or heard the train as it approached the crossing, in time to have stopped his automobile so as to have prevented the accident?"
To this question the jury answered: "Yes."

Special issue F: "Could, or could not, the deceased, as he approached the crossing and when within a distance of not less than 30 feet from the crossing, by the exercise of ordinary care, have seen or heard the train as it approached the crossing, in time to have stopped his automobile so as to have prevented the accident?"
To this the jury answered: "He could have."

After the return of the jury's verdict, the plaintiffs filed a motion for judgment in their favor, as did also the defendants, and the motion of plaintiffs having been granted, and that of defendants overruled, the latter timely excepted, and have brought the case to this court by appeal.

There is no contention made by appellants that the verdict of the jury, which, in effect, convicted appellants of negligence which became the proximate cause of Lee Wilkerson's death, was not warranted by the law and by the evidence adduced upon the trial, and we shall treat the case here as though it were admitted by appellants that they were guilty of negligence which proximately caused Lee Wilkerson's death, as determined by the jury.

By their first five assignments of error, appellants complain that the trial court should not, upon the verdict of the jury as a whole, have rendered judgment in favor of the plaintiffs, but, on the contrary, considering the verdict as a whole, should have rendered judgment in favor of defendants, and erred in overruling defendants' motion to that effect. These assignments are not grouped and submitted together, but, as we construe them, they relate practically to the same question or point contended for by appellants, and will therefore be disposed of as one assignment.

The main contention of appellants under these assignments is that the legal effect of the answers of the jury to special issues A, B, C, D, E, and F, as we have shown them above, was to convict Lee Wilkerson, the deceased, of contributory negligence without which his injury and death would not have occurred. The first proposition under the assignments is as follows:

"The undisputed evidence having shown that the view of the crossing at Cox street, and of the approaching train, was partially obstructed, and the jury having, upon evidence that warranted it, found that the speed of the automobile which the deceased was driving as he approached the crossing, and when within 30 feet of the main line track, exceeded 6 miles an hour, the deceased was guilty of negligence as a matter of law, and such negligence was the proximate cause of his injury and death."

[1, 2] We agree with the contention of appellants, in this connection, that upon the undisputed evidence showing that the view of the crossing was obstructed, and the finding of the jury that the speed of Wilkerson's automobile was 12 miles an hour as he went upon the crossing, Wilkerson was guilty of negligence as a matter of law. Section 17, c. 207, Acts 35th Leg. (Vernon's Ann. Pen. Code Supp. 1918, art. 820l). We do not agree, however, with the contention that such negligence was, as a matter of law, the proximate cause of Wilkerson's death, in view of the facts of this case, but, on the contrary, we think that the facts surrounding this accident were such as required the trial court to leave to the determination of the jury, as an issue of fact whether the failure on the part of the deceased to reduce the speed of his automobile to 6 miles an hour, when within a distance of not less than 30 feet from appellants' track, was the proximate cause of his injury and death. T. & N. O. R. Co. v. Harrington, 209 S. W. 685.

[3] The second proposition is as follows:

"If, as the jury found, the deceased, Lee Wilkerson, as he approached the crossing, and when within the distance of not less than 30 feet from the crossing, by the exercise of ordinary care, could have seen or heard the train as it approached the crossing in time to have stopped his automobile so as to have prevented the accident, then his failure to see or hear the approaching train was negligence

on his part which proximately resulted in the collision and his consequent death."

In this connection, appellants contend, substantially, that the jury's answer to their special issue F was, in effect, a finding by the jury that Lee Wilkerson was guilty of negligence which was the proximate cause of his death, but, if mistaken in their contention that the jury's answer to that issue involved a finding that such negligence on Wilkerson's part was a proximate cause of his death, that nevertheless such negligence was, as a matter of law, a proximate cause of his death. That the answer of the jury to special issue F, as we have quoted it above, does not involve a finding by the jury that the failure on the part of Wilkerson to see or hear the approach of appellants' train in time to have avoided injury was the proximate cause of his death, we have no doubt. The only finding of the jury in answer to that issue was to the effect that the deceased, as he approached the crossing in question and when within a distance of not less than 30 feet therefrom, could then, by the exercise of ordinary care, have seen or heard the train as it approached the crossing, in time to have stopped his automobile and prevented the accident, but such finding falls short of a finding that the failure of deceased in these respects became a proximate cause of his injury. In disposing of this proposition, we will say that we seriously doubt whether the answer of the jury to said issue F amounted to a finding by the jury that deceased was guilty of negligence in failing to see or hear the approach of the train to the crossing, but if the answer should be construed as a finding by the jury that deceased was so guilty of negligence, still the issue as to whether such negligence proximately contributed to the injury, under all the facts and circumstances surrounding the accident, was an issue of fact, we think, for the determination of the jury, and that it would not follow, as a matter of law, that such negligence, if there was such, was the proximate cause of the injury. Able counsel for appellants have cited many authorities which they contend are decisive in favor of the correctness of their contention under this proposition, and we have considered them all, and without discussing them, because of the lack of time, and also without mentioning in detail the facts and circumstances as shown by the record surrounding this accident, we have concluded that it could not be properly held that if deceased's failure to see or hear the approach of the train to the crossing amounted to negligence, as contended for by appellants, that such negligence was, as a matter of law, the proximate cause of his death. This, in effect, disposes of the first five assignments of error, which are overruled.

The sixth assignment complains of the action of the trial court in refusing to peremptorily instruct a verdict in favor of appellants. The contention under the assignment is, substantially, that upon the undisputed evidence in the case, deceased, Wilkerson, was guilty of negligence, which, as a matter of law, was the proximate cause of his death, and for that reason appellants should have had judgment in their favor. We are compelled to overrule the assignment, for the reason that in our opinion the facts adduced upon the trial in this case bearing upon the defense of contributory negligence were such as to require the submission of that issue to the jury, as was done, in effect, by the trial court, and this assignment is overruled. We would have no hesitancy in letting this opinion reflect the facts and circumstances in connection with the issue of contributory negligence, if the time of this court would permit, but in view of such lack of time, we have only expressed our conclusions upon these assignments.

Special issue No. 7, submitted by the court to the jury, was as follows:

"Did any act or omission of the deceased, Lee Wilkerson, which immediately preceded the injury that resulted in his death, amount to negligence on his part, as that term has been defined to you in this charge?"

Before this issue was submitted to the jury, appellants timely objected to the same, on the ground, principally, that such issue "does not apply the acts of the deceased, Lee Wilkerson, to the facts as disclosed by the evidence, but permits the jury to go out in the realm of speculation and determine whether or not, in their opinion, the deceased did not do or did do any act that would, in their opinion, amount to negligence." The overruling of this objection by the trial court and the giving of special issue No. 7 is made the basis of the seventh assignment of error. Under the assignments, appellants, by proposition, contend as follows:

"The defendants having alleged specific acts of contributory negligence on the part of deceased, and the evidence having raised the issue of contributory negligence as to certain of the specific acts charged, the court should have confined the inquiry as to whether the deceased was guilty of contributory negligence to the acts alleged, and as to which the evidence was sufficient to raise the issue; and the submission of the issue complained of, over the defendants' objection, is reversible error."

[4] We cannot agree with appellants, that the submission to the jury of special issue No. 7 could have resulted in any injury or had any effect prejudicial to appellants. It will be observed that the complaint is not that the court failed, after being requested by appellants, to submit a special issue grouping the facts relied upon by appellants

and claimed to constitute contributory negligence on the part of the deceased. We see no room for complaint by appellants in regard to this matter. Therefore the assignment is overruled.

[5-7] Special issue No. 6 submitted by the court for the jury's answer was:

"Do you believe from the evidence that the deceased, Lee Wilkerson, did any act or failed to do any act that contributed to the injury causing his death?"

To the question, the jury answered: "No."

Now the eighth assignment of error is as follows:

"The court erred in holding that the finding of the jury to special issue No. 6 was a finding of fact that the deceased, Lee Wilkerson, was not guilty of contributory negligence, and that therefore judgment should be rendered for the plaintiffs, for the reason that said issue, as so submitted, is not a finding of fact by the jury that the deceased was not guilty of contributory negligence, which was not the proximate cause of his injury, and is but the submission of an issue as to whether or not in the opinion of the jury he did any act, or failed to do any act, which would or did contribute to his injury, and does not submit for the determination of the jury, and is not a finding of the jury that the deceased, Lee Wilkerson, exercised ordinary care as he approached the crossing. Then said finding is in direct conflict with the finding of the jury as to special issues Nos. A, B, C, D, E, and F, and if there is a conflict in the findings of the jury, upon material issues, affecting the rights of the plaintiffs to recover, then the court should not enter judgment in favor of plaintiffs upon conflicting findings, or if the court should enter said judgment, then said judgment should be set aside by reason of the conflicting findings."

The proposition is:

"Assuming that the finding of the jury in answer to the sixth special issue is not conflicting with their finding in answer to special issue F, and assuming, further, that the conflict was incompetent and irreconcilable, the court should either have required the jury to reconcile the conflict before receiving their verdict, or, failing in this, should have declared a mistrial, or, having entered judgment upon the verdict, should have set it aside and granted a new trial."

Relative to this assignment, we are of opinion that the answer of the jury to special issue No. 6, by which the jury said that the deceased did not do any act and did not fail to do anything that contributed to his injury, had the inevitable effect to acquit deceased of contributory negligence. Such certainly must have been the intention of the jury. Now, as to the correctness of the legal proposition under this assignment, as we have quoted it above, there can be no doubt— that is to say, if material findings on the part of the jury in this case are contradictory and in conflict with each other, then, no judgment could have been properly entered upon such verdict; but we cannot agree with the contention of appellants, as shown in the above-quoted proposition, that the answer of the jury to special issue No. 6 was contradictory to and in conflict with their answer to special issue F requested by appellant. We have shown already these issues, and the answers thereto, and will not restate them here. The assignment is overruled.

[8] By the ninth assignment of error, the appellant Houston, East & West Texas Railway Company complains that no judgment should have been rendered against it in this case because the collision which resulted in the death of Lee Wilkerson occurred in July, 1919, and at that time the President of the United States, pursuant to authority granted by Congress, had assumed the control, possession, and operation of the Houston, East & West Texas Railway, and was then in the possession and control of such railway, and operating the same through Director General of Railroads, Walker D. Hines, and had excluded said railway company from the custody, control, and management of said railway. Without going into any discussion of this assignment, we are of opinion that it must be sustained, and the judgment in this case, in so far as it was rendered against appellant Houston, East & West Texas Railway Company, is reversed, and judgment will be rendered by this court that the appellees recover nothing as against said appellant. Haubert v. B. & O. Ry. Co. (D. C.) 259 Fed. 361; Hatcher & Snider v. A., T. & S. F. Ry. Co. (D. C.) 258 Fed. 952; Mardis v. Hines (D. C.) 258 Fed. 945. We also think that the reasoning of the Galveston Court of Civil Appeals in Western Union Telegraph Co. v. Wallace, filed on February 10, 1920, is sound, and is applicable to the point raised by this assignment. The case will be found reported in 225 S. W. ——.[1]

From what we have said, it results that this court is of the opinion that the judgment in this case in favor of the plaintiffs, as against Walker D. Hines, in his capacity as Director General of Railroads, should be affirmed, and it will be so ordered; but that as to the appellant Houston, East & West Texas Railway Company, the judgment should be reversed and rendered, and it will be so ordered.

[9] We note, however, that the record fails to disclose that the trial court's attention was called to the error in rendering judgment in favor of plaintiffs against the Houston, East & West Texas Railway Company, and no motion was made by appellants to correct such improper judgment, and for that reason the entire costs of this appeal will be adjudged against appellants.

[1] Rehearing pending.