**AUSTIN, Banking Comm'r, v. McSHANE et al. (No. 3301.)**

(Court of Civil Appeals of Texas. Texarkana. Dec. 17, 1926. Rehearing Denied Dec. 30, 1926.)

**1. Banks and banking ⬅⮞63½—Banking Commissioner, liquidating insolvent bank, acquired only rights on notes that bank had against makers.**

Banking commissioner, liquidating affairs of insolvent bank, acquired only such rights on notes as bank had against makers thereof.

**2. Trial ⬅⮞365(1)—Finding that note was executed solely as accommodation to bank held finding that it was without consideration.**

Finding of jury that note was executed solely as accommodation to bank, and to save it loss on loans made to third person, *held* finding that it was without consideration.

**3. Bills and notes ⬅⮞518(1)—Evidence held to sustain finding that note was without consideration to makers to protect bank in debt in excess of legal amount (Vernon's Ann. Civ. St. 1925, art. 529).**

Evidence *held* to sustain finding that makers executed note without consideration to themselves, and solely to aid bank in protect-

ing security bank had for debt of third person owing bank in excess of amount permitted under Vernon's Ann. Civ. St. 1925, art. 529.

**4. Trial ⬅⮞365(1)—Finding that makers agreed that interest be paid by bank with their note as security held to show note supported by consideration.**

Finding that some of makers of note agreed that interest due by third person on mortgages might be paid out of bank's assets, with understanding that makers' note should secure bank in payment thereof, *held* finding that note was supported by sufficient consideration.

**5. Trial ⬅⮞358—Judgment cannot be rendered on special findings which are contradictory.**

Where different findings of special verdict were that notes sued on were without consideration, and were supported by sufficient consideration, judgment thereon for defendants was unwarranted.

**6. Trial ⬅⮞358—Where findings on special issues were contradictory, trial judge should set findings aside or require jury to consider case further.**

Where findings on special issues were contradictory, trial judge should have refused to receive verdict and required jury to consider case further, or, having received verdict, should have set aside findings.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Suit by J. L. Chapman, Banking Commissioner, against John P. McShane and others, prosecuted by Charles O. Austin as plaintiff's successor. From judgment for defendants, plaintiff appeals. Reversed and remanded for new trial.

The suit was commenced by J. L. Chapman in his official capacity as banking commissioner, and was prosecuted by appellant Austin as the successor in office of said Chapman. It was to recover ,of appellees Mrs. Corinne Shaw as executrix of the will of N. A. Shaw, deceased, John P. McShane, R. W. Rogers, E. D. Trigg, V. A. Ghio, and J. F. Rochelle the amount of three promissory notes executed by said N. A. Shaw, McShane, Rogers, Trigg, Ghio, and Rochelle—one of the three notes being for $1,311.94, interest and attorney's fees, dated January 15, 1923, payable November 1, 1923, to the order of the Guaranty State Bank of Texarkana; another for $3,000, interest and attorney's fees, dated April 3, 1923, payable November 1, 1923, to the order of said bank; and the other for $3,000, interest and attorney's fees, dated November 7, 1923, payable 90 days after its date to the order of said bank.

In his petition the banking commissioner alleged that on February 5, 1924, said bank "became and was insolvent," and that he, as provided by law, took possession of its assets, including the above-described three notes, "for the purpose of liquidating the affairs of said bank." In their answer appellees alleged

---

that the notes were without a consideration, and that they therefore were not liable on same. They alleged, further, that, if they were liable at all on the notes, they were not liable for the amount claimed by appellant, because, they said, the notes were entitled to specified credits which appellant had not allowed.

It appeared from testimony heard at the trial that in 1919 W. R. Garland purchased 751 acres of land in Miller county, Ark., the consideration being $20,000 then paid by Garland, and his eleven promissory notes for $5,000 each. Eight of the eleven notes, payable to the order of E. D. Trigg and Roy Taylor, were assigned by them to Lee Tayloe. At the time Trigg and Taylor so assigned the notes they guaranteed the payment of same, it seems. The remaining three of the eleven notes were turned over to said Guaranty State Bank by said Taylor. All the eleven notes were secured by a lien on the 751 acres of land, but the lien securing the three turned over to the bank was secondary, and subject to the lien securing the eight assigned to Tayloe. February 20, 1922, interest amounting to $6,758.90 had accrued, and was due and unpaid on the notes held by Tayloe. Garland was unable to pay the $6,758.90, and Tayloe was threatening to bring suit to recover the amount of the notes, including said interest, and to foreclose the lien securing same, when N. A. Shaw, acting for the bank to induce Tayloe not to prosecute such a foreclosure suit, agreed to pay the $6,758.90. Thereafter, to wit, on March 13, 1922, when Garland was indebted to the bank for sums it had loaned him in excess of the amount it lawfully could loan him, the bank paid the $6,758.90 to Tayloe in accordance with said agreement. At the time the bank made the payment it received an instrument in writing executed by Tayloe, referred to in the record as a "subrogation agreement," whereby Tayloe transferred and assigned to said N. A. Shaw (but for the bank) a lien, but inferior and subject to his (Tayloe's) on the 751 acres of land, to secure the $6,758.90 paid him by the bank. It was declared in the instrument that the purpose of the parties to it was to subrogate Shaw (the bank) to Tayloe's rights as to the interest. March 14, 1922, appellees (excepting Mrs. Corinne Shaw) and N. A. Shaw made a promissory note to the bank for $6,758.90, the amount of the interest it had paid to Tayloe the day before. N. A. Shaw was then president of said bank, E. D. Trigg was its cashier, and they and McShane, Rogers, Ghio and Rochelle were directors of the bank. March 16, 1922, Garland also made a note to the bank for the $6,758.90. The capital stock of the bank was $50,000, and it had a certified surplus of $15,000. It ceased to do business February 5, 1924, when the banking commissioner took charge of it for the purpose of liquidating its affairs. Afterwards, in a fore-closure suit by Tayloe on the eight notes he owned, the land hereinbefore referred to was sold for a sum no more than sufficient to satisfy the amount of said eight notes, and nothing was ever realized on the three notes of Garland held by the bank as stated.

It was undisputed in the testimony heard at the trial that the two notes for $3,000 each sued upon were renewal notes for parts of the note for $6,758.90 executed by N. A. Shaw and the appellees, except Mrs. Corinne Shaw; and the jury found, in response to a special issue submitted to them, that the note for $1,311.94 sued upon also was a renewal note for a part of the said $6,758.90 note. There was testimony that the 751 acres of land hereinbefore referred to was fairly worth the amount of the notes it secured held by Tayloe, and also the notes it secured held by the bank. But the bank and N. A. Shaw and appellees, except Mrs. Corinne Shaw, were apprehensive, if the land should be sold under foreclosure proceedings threatened by Tayloe, it would not bring more than enough to satisfy the amount of Tayloe's notes, in which event, because the bank's lien to secure the three notes it held, made by Garland for $5,000 each, was secondary and subject to Tayloe's and, because of Garland's financial condition, the bank would lose the amount of said three notes. There was testimony that Tayloe was willing to forego the commencement and prosecution of such a foreclosure suit, if the $6,758.90 interest due on the eight notes he held was paid; that it was to prevent such a suit by Tayloe, and in that way protect its interest as the holder of a second lien against the 751 acres of land, instead of, that the bank paid said $6,758.90 interest due Tayloe, and took from him the assignment of the lien he held as security for the payment of such interest, hereinbefore referred to. There was testimony that the purpose of N. A. Shaw and the appellees, who executed the note of March 14, 1922, for $6,758.90 to the bank, was to aid the bank in avoiding such loss by its paying the interest due Tayloe and replacing the $6,758.90 of its money necessary for that purpose by borrowing the amount on their credit. It was on the testimony referred to, it seems, that the jury, in response to another special issue submitted to them, found that N. A. Shaw and the appellees, except Mrs. Corinne Shaw, executed the note of March 14, 1922, "solely as an accommodation" to the bank, and to save it a loss on loans it had made to Garland. There was testimony that said note for $6,758.90, made by N. A. Shaw and the appellees, except Mrs. Corinne Shaw, after it was made, was treated as assets of the bank, and that, while it was being so treated, said N. A. Shaw and the appellees who executed it acknowledged to a bank examiner engaged in going over the bank's affairs that they were liable as makers of the note. There was testimony to the contrary of such

an acknowledgment, and the jury found on a special issue submitted to them that appellees did not make such an acknowledgment. The testimony was conflicting as to whether the bank examiner, while discharging his duties as such, in going over the affairs of said bank, knew that Garland's note of March 16, 1922, for $6,758.90, was made by him to the bank, because it had paid said amount to Tayloe for him, and as to whether said examiner knew that the note so executed was in the possession of the bank; but, in response to a special issue submitted to them, the jury found the bank examiner had such knowledge. The jury further found, in response to issues submitted to them, that the $6,758.90 note of March 14, 1922, was executed by N. A. Shaw and the appellees, except Mrs. Corinne Shaw, after the bank paid that sum to Tayloe on account of interest due him by Garland; but that said N. A. Shaw and the appellees who executed said note of March 14, 1922, as directors of the bank, discussed the matter of the bank's paying the $6,758.90 to Tayloe, and agreed the sum might be paid out of the assets of the bank, with the understanding that their note "should be executed to represent and secure the bank in the payment thereof."

The appeal is from a judgment denying appellant any relief, and in appellee's favor for costs.

King, Mahaffey & Wheeler, of Texarkana, for appellant.

Keeney & Dalby, of Texarkana, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] When the banking commissioner took charge of the insolvent bank for the purpose of liquidating its affairs, he acquired only such rights as to the notes sued upon as the bank had against the makers thereof. Brady v. Cobbs (Tex. Civ. App.) 211 S. W. 802; Hall v. Bank (Tex. Civ. App.) 255 S. W. 506; Chapman v. Clark (Tex. Civ. App.) 262 S. W. 161; King v. Wise (Tex. Com. App.) 282 S. W. 570; Austin v. Sisk (Tex. Civ. App.) 283 S. W. 535. These notes were renewals of the note for $6,758.90 made by N. A. Shaw and the appellees other than Mrs. Corinne Shaw March 14, 1922. Appellees insist, and appellant agrees, if the $6,758.90 note was without consideration because made solely for the accommodation of the bank, that the notes sued upon, because mere renewals of said $6,758.90, also were without consideration. If they were, then the bank, for that reason, could not have recovered on them in a suit against appellees (Bank v. Ford [Tex. Civ. App.] 152 S. W. 700; Brady v. Cobbs [Tex. Civ. App.] 211 S. W. 802; 8 C. J. 259, and authorities there cited); and, if it could not, the banking commissioner, being in no better position to do so than it was in, was not entitled to recover as he sought to do.

[2, 3] As shown in the statement above, one of the findings of the jury was that the note of March 14, 1922, was executed by N. A. Shaw and appellees, except Mrs. Corinne Shaw, "solely as an accommodation to the bank, and to save it a loss on loans it had made to Garland."

Contrary to the contention of appellant, we construe the effect of the finding to be to determine that said note of March 14, 1922, was without a consideration, as appellees insisted it was. Trust Co. v. Brady, 165 Mo. 197, 65 S. W. 303; Woodbury v. Glick, 151 Iowa, 648, 132 N. W. 67; In re Tasker's Estate, 182 Pa. 122, 37 A. 924; Vitkovitvh v. Kleinecke, 33 Tex. Civ. App. 20, 75 S. W. 544; 8 C. J. 259. Appellant insists, however, that, if such was the effect of the finding, it was unwarranted, because, he says, it conclusively appeared from the testimony that said note of March 14, 1922, was made for Garland's accommodation, and not for the accommodation of the bank; and, further, that it appeared that the transaction between Tayloe and the bank, in which the latter paid the former the amount of interest Garland owed him, was unlawful as to the bank because in effect a loan by it of the amount of the interest to Garland at a time when he was already indebted to it in a sum as great as it could loan him without violating the statute (article 529, Vernon's Statutes), forbidding such a bank from lending to one person a sum in excess of 25 per cent. of its capital stock and surplus.

As we view the record, the jury had a right to find to the contrary of appellant's contention, as stated, and to say from testimony referred to in the statement above that N. A. Shaw and the appellees who executed said note of March 14, 1922, did so without any consideration to themselves, and solely for the purpose of aiding the bank in protecting security it had for indebtedness Garland then owed it (amounting to more than $15,000), by enabling the bank to borrow on their credit the $6,758.90 necessary for it to use in buying Tayloe's claim against Garland for past-due interest, and thereby avoiding the prosecution by Tayloe of a foreclosure suit and a sale of the land constituting such security. If the jury had such a right, we think it cannot be said that the finding in question was unwarranted.

[4] Appellant not only insists that the finding was without evidence to support it, if it is construed as a finding that said note of March 14, 1922, was without a consideration, but insists that the jury determined to the contrary, and that said note was supported by a sufficient consideration, when they found, as is shown in the statement above, that N. A. Shaw and the appellees, except Mrs. Corinne Shaw, agreed that the $6,758.90 interest due Tayloe by Garland "might be paid out of the assets of the bank, with the understanding that their note should be ex-

ecuted to represent and secure the bank in the payment thereof."

[5, 6] We agree that the effect of the finding last referred to was to determine that said note of March 14, 1922, was supported by a sufficient consideration. It follows that, as we construe the two findings in question, they are in conflict with each other. If they are, the judgment is erroneous, for in that event a judgment in favor of either appellant or appellees was not warranted. The trial court should have refused to receive the verdict, and required the jury to consider the case further, or, having received it, should have set aside the findings and directed a new trial. Railway Co. v. Wilkerson (Tex. Civ. App.) 224 S. W. 574; Oil Co. v. Strauss (Tex. Civ. App.) 243 S. W. 528; Puckett v. Davis (Tex. Civ. App.) 238 S. W. 367.

The judgment will be reversed, and the cause will be remanded to the court below for a new trial.