### DAVIS, Agent, etc., v. PETTITT.
### (No. 8209.)

(Court of Civil Appeals of Texas. Galveston. May 13, 1922. Dissenting Opinion, May 30, 1922. Rehearing Denied June 8, 1922.)

**1. Negligence &#9758;93(1)—Automobile driver's negligence not imputed to guest.**

The negligence of a driver of an automobile resulting in an accident cannot be imputed to the guest.

**2. Railroads &#9758;350(21)—Contributory negligence of guest in automobile held for jury.**

Where obstructions prevented plaintiff, a guest in an automobile approaching crossing at a moderate rate of speed, from seeing a train running 35 miles an hour without signals until the machine was within 30 feet of the track, when he tried to save himself by jumping as the driver attempted to cross, *held*, that the court did not err in submitting the case to the jury.

**3. Railroads &#9758;327(12)—Test of care by guest in automobile stated.**

The test of due care on the part of a guest in an automobile approaching a crossing is whether in the particular circumstances confronting him he failed to exercise ordinary care to discover the approach of the train, or failed to act as a person of ordinary prudence would have acted under those circumstances.

---

&#9758;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes.

**4. Railroads ⚖⇒330(3)—Traveler may rely on signals.**

A requested charge forbidding the jury to take into consideration the fact that plaintiff injured at a crossing was not required to anticipate that the duty of blowing the whistle and ringing the bell for the crossing would go unperformed is properly rejected.

**5. Trial ⚖⇒252(9)—Requested charge that signal for a railroad crossing, sounded more than 80 rods from crossing, was signal at least 80 rods therefrom, properly rejected, as not applicable where claim was that no whistle sounded.**

In an action for personal injuries, a requested charge that the whistle of the engine was sounded at a distance of more than 80 rods from the crossing where the collision occurred, and that such point at which the whistle was so sounded was situated so that the signal could be heard in the vicinity of the crossing, and was sufficient to constitute a warning to those about to cross, was a signal at least 80 rods from the crossing where the collision occurred, was properly rejected, where claim made was that no whistle was sounded.

Lane, J., dissenting.

Appeal from District Court, Wharton County; M. S. Munson, Judge.

Action by Mose Pettitt against James C. Davis, Agent, designated by the President. From a judgment for defendant, plaintiff appeals. Affirmed.

Baker, Batts, Parker & Garwood, of Houston, Proctor, Vandenberge, Crain & Mitchell, of Victoria, and George P. Willis, of El Campo, for appellant.

John W. Parker, of Houston, for appellee.

GRAVES, J. Appellee, Pettitt, while riding as a guest in a Ford automobile driven by "Hudie" Hawes, was personally injured as the result of a collision between it and one of appellant's trains at the intersection of the Galveston, Harrisburg & San Antonio Railway and the Wharton and Hungerford public road; the point being about 3 miles east of Wharton, Tex., and known as the Peach Creek crossing. "Bobbie" Houston was also an invited guest in the automobile, sitting on the back seat alone, while the appellee occupied the right-hand side of the front seat with Hawes. At the crossing the railroad ran practically east and west, the public road about north and south, the train was going west toward Wharton, and the automobile north toward the town of Wallace, the objective of Hawes and his two passengers.

The appellee's petition alleged that there were objects, trees and vegetation, so situated upon and near the railroad right of way as to both obstruct the view along the railway to the east of those approaching the crossing from the south and that of the roadway toward the south of the train operatives coming from the east; that the proximate cause of the collision and consequent injuries was the negligence of appellant's employés, in that they "approached the said crossing without blowing the engine whistle and ringing the bell at a distance of at least 80 rods from the said public road and highway, and without keeping the bell ringing until the said crossing was passed."

The appellant answered this averment of a failure to give the statutory signals with a general denial only, then at length charged the appellee with contributory negligence as to the manner in which he approached and went upon the railway track, alleging that if he had taken the precaution of a man of ordinary prudence in similar circumstances he could and would have avoided the collision, and also specially accused him of violating the act governing the speed of motor vehicles in approaching obscured crossings; that is, section 17, chapter 207, Acts of 35th Legislature (Vernon's Ann. Pen. Code Supp. 1918, art. 820*l*).

The cause was submitted to a jury on special issues; the only ground of negligence presented being the alleged failure to give the statutory signals by whistle and bell for the crossing. The ones of these around which the controversy upon appeal chiefly revolves, together with the jury's answers thereto, are the following:

"(1) Did those in charge of the locomotive fail to sound the whistle thereon at distance of at least 80 rods (440 yards) from the public road crossing, and fail at such distance to commence ringing and to continue to ring the bell thereon until just before the collision occurred? Answer: Yes.

"(2) If you answer yes to special issue No. 1, then was the failure to thus sound the whistle and ring the bell the proximate cause of the injury of the plaintiff? Answer: Yes.

"(3) Was Pettitt a guest of Hawes in the automobile on the trip to Wallace? Answer: He was.

"(4) Did the trees, vegetation, and houses on the east side of the public road in the vicinity of the Peach Creek crossing of the public road over the railway track, or any of said objects, constitute, on May 2, 1919, an obscurement of the railway track in an easterly direction from any point on said road in the vicinity of the road crossing over the track, to the view of a traveler on the public road going in the direction of the railway crossing? Answer: Yes.

"(5) If you have answered the foregoing special issue No. 4 'No,' you need not answer this question; but, if you have answered it 'Yes,' then answer this question: Was there any point on the public road and south of the railway track from which a person approaching the railway crossing from the south on the public road could see past the trees, vegetation, or houses mentioned in special issue No. 4 in an easterly direction and get a view of the

---

⚖⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

railway track in an easterly direction? Answer: Yes.

"(6) If you have answered the foregoing special issue No. 5 'No,' you need not answer this question; but, if you have answered it 'Yes,' then answer this question: Was such point south of the railway track, at which a view of the railway track in an easterly direction could be gotten, such a distance from the railway track as that a person approaching the railway crossing in a Ford automobile could by the exercise of ordinary care have ascertained whether a train was approaching from the east in time to have avoided a collision with said train? Answer: Yes.

"(7) If you have answered the foregoing special issue No. 4 'No,' you need not answer this question; but, if you have answered it 'Yes,' then answer this question: Was the plaintiff, prior to the time he left Wharton, on the afternoon of May 2, 1919, in the automobile in the company of Hawes and Houston, familiar with the Peach Creek railway crossing of the public road and the relative location thereto of the trees, vegetation, and houses mentioned in special issue No. 4? Answer: Yes.

"(8) Was the plaintiff aware of the manner in which the automobile was being driven and handled by the witness Hawes when it was in the vicinity of and near the railway crossing? Answer: Yes.

"(9) Was the speed of the automobile as it was nearing the Peach Creek crossing of the public road across the railway track reduced to a speed lower than the speed at which it was originally going on the road en route from Wharton? Answer: Yes.

"(10) If you have answered the foregoing special issue No. 9 'No,' you need not answer this question; but, if you have answered it 'Yes,' then answer these two questions: (a) To what rate of speed per hour was the automobile speed reduced? Answer the number of miles per hour. (b) At what distance from the railway track was such reduction in speed made? Answer: (a) 6 miles per hour; (b) about 40 feet.

"(11) If you have answered the foregoing special issue No. 9 'No,' then answer this question: Did plaintiff do anything in any effort to cause the driver of the automobile to reduce its speed as it reached or was reaching the vicinity of the railway crossing? Answer: No.

"(12) Did the witness Hawes, in driving the automobile up to and on the railway crossing in the manner and circumstances under which he did, fail to exercise that degree of care for his own safety and that of the other occupants of the automobile that a man of ordinary care would have exercised under the same or similar circumstances? Answer: No.

"(13) Could the plaintiff, or could he not, by the exercise of that degree of care which a man of ordinary care should exercise for his own safety, in approaching the railway crossing in question in a Ford automobile, have avoided injury by collision with the train? Answer: No.

"(14) Did plaintiff, in approaching the crossing, fail to use the care that a man of ordinary prudence, under the same or similar circumstances, would have used to discover the approach of the train and avoid contact therewith? Answer: He did not.

"(15) What sum of money, if paid in hand at this time, would be fair and just compensation for the injuries alleged by plaintiff in his petition, and which you find from the evidence he sustained, and in arriving at the amount you will take into account the earnings lost by him as a result of his injuries up to this time, if any, the mental and physical pain suffered by him as a result thereof, if any, and that will be suffered by him in the future on account thereof, if any, and the impairment of his ability to earn money in the future on account thereof, if any? In this connection, state the amount of damages you assess. Answer: $12,500.00."

It thus appears that the operatives of the train were found not to have given the required signals, that such dereliction was a proximate cause of Pettitt's injuries, that he was at the time a guest in the automobile, that it approached the crossing at a speed of 6 miles an hour for about the last 40 feet before the impact, that the appellee was not guilty of contributory negligence, and that he suffered damages to the extent of $12,500. Judgment in appellee's favor for the sum so returned was duly entered; hence this appeal by the designated agent in charge of the railway at the time.

The findings that Pettitt's damages amounted to $12,500, that he was a guest in the automobile, and that its speed was reduced to 6 miles per hour for about the last 40 feet of its run, are not attacked, so those matters all stand in this court as established facts. Through a number of propositions under his first assignment of error, appellant ably insists that the evidence conclusively showed appellee to have been guilty of negligence which contributed to and proximately caused his injuries, thereby as a matter of law precluding any recovery by him.

If this contention be correct, then appellant's requested peremptory instruction should have been given; but, after a careful review of the statement of facts, we cannot agree that the position is well taken. The undisputed proof showed two situations: (1) For half a mile south of the crossing the public road, after making a turn to the north, ran on practically a straight line to the railroad, and for the entire distance from this turn to within about 40 feet of the railway track—excepting possibly a narrow "aisle" or slit about 3 feet wide at about 60 feet from the track—the timber along and adjacent to Peach Creek, together with some buildings up within about 150 feet of the railroad, so obstructed the view of the railway to the east of the crossing that a train coming from that direction, as this one was, could not be seen by persons approaching the crossing from the south along this public road; (2) for about 40 feet along the road

south from the crossing—that is, until a bois d'arc bush about 10 feet high and 8 feet wide was encountered—the view of the railway track to the east was unobstructed for perhaps a quarter of a mile. This "aisle" just referred to was mentioned by but one witness, the driver Hawes, who said that he visited the crossing the day before this trial below—that is, about two years subsequent to the accident—and then found there what he termed an "aisle or opening" about 3 feet wide between this bois d'arc bush, which was covered with vines and stood 3 or 4 feet inside the railroad right of way, and one of the buildings previously mentioned along with the trees behind it at and near the right of way; that a person standing in the public road about 60 feet south of the crossing could see through this aisle a narrow point on the railway 420 feet east of the crossing. He reiterated, however, that this small opening would only give one approaching the crossing in an automobile at a speed of about 6 miles an hour a mere glimpse of the railroad to the east, a blurred vision, and that otherwise he could not see the track at all until he had passed the bois d'arc bush and reached the 40-foot zone beyond.

There is no showing that this "aisle," or opening, even existed back at the time of the collision; but, if there had been, it still could not reasonably be held that the appellee was guilty of contributory negligence as a matter of law, merely because he did not see the train through it as the automobile flitted by; indeed, there is nothing to indicate whether the train had then reached the point where it could have been seen, nor that those in the automobile had time to concentrate their vision on it at the far end of so narrow a space. We therefore conclude that the inquiry as to whether or not the appellee was in law guilty of contributory negligence is alone referable to and determinable upon the situation existent at and beyond the point 40 feet from the track where the jury found the speed of the automobile to have been reduced to 6 miles per hour. When that is done, and the evidence and findings bearing upon the matter are gone into, that the issue was one for the jury seems to us clear, especially in view of the recent pronouncement of our Supreme Court through the Commission of Appeals in Railway v. Harrington, 235 S. W. 188, as to the rule of law applicable to such a state of facts.

[1] Since the appellee was the guest of Hawes, the driver of the car, the latter's negligence, even if it could be said that he was guilty of any, could not be imputed to the former. Hines v. Welch (Tex. Civ. App.) 229 S. W. 683 (4-6); Railway v. Johnson (Tex. Civ. App.) 224 S. W. 278 (4). Furthermore, as it must be accepted that the speed of the automobile was reduced to not exceeding 6 miles an hour at a greater distance than 30 feet from the crossing, there could have been no violation of section 17, chapter 207, Acts 35th Legislature (Vernon's Ann. Pen. Code Supp. 1918, art. 820*l*), the terms of which permitted the limits here obtaining. Considerations affecting these two matters are accordingly eliminated.

[2] Despite conflicts in some respects, there was sufficient supporting testimony for all the jury's quoted findings affecting the issues of negligence and contributory negligence, as well as for some additional facts which may be said to be included; the general substance and effect of all combined being: That the train approached the crossing at a high rate of speed, 35 or 40 miles an hour, without giving the signals by bell and whistle required by statute, as specified in the first special issue; that Hawes, the driver of the automobile, when in the vicinity of the crossing, slowed down and came on at a speed of 6 miles per hour for a distance of about 40 feet from the track, those in the automobile listening all the while for the train and hearing no signals from nor noise of one; that they looked after passing the obstructions and getting where the view was clear, but none of them saw the train until they had gotten well upon the right of way, within 30 feet or less of the railroad track, when it was too late for the appellee to escape, notwithstanding efforts he made to do so by trying to jump from the automobile, the driver having meantime become greatly startled on discovering the train, and, realizing his life was in danger, having then attempted to get across ahead of it by opening wide the throttle. Of the three, Bobbie Houston appears to have seen the train first, instantly jumping head first from the automobile, yelling "Look out!" to the others as he did so, and landing within 5 or 6 feet of the track.

In this state of the evidence as a whole, which it is deemed unnecessary to here detail, with the automobile running at such moderate speed when so nearing the railroad, and with the appellee further affirmatively shown to have had no control over nor anything to do with the driving, the jury might well have directly determined, as was the effect anyway of answers 13 and 14, that no duty rested upon him to cause or to attempt to cause Hawes to stop it; but, had any such duty arisen, it is manifest from the findings already herein made, as well as from the jury's answers to foregoing special issues 13 and 14, that after the train was discovered there was neither time within which he might have induced Hawes to stop, nor was the latter in his startled and alarmed condition at the time susceptible to any such control. Moreover, the appellee and his associates in the automobile had a clear right to expect that the operatives of the train would blow the whistle and ring the bell as the law provided, and were not re-

quired to anticipate that they would negligently fail to discharge that statutory duty. Railway v. Gray, 65 Tex. 36.

If these signals had been duly given, the accident might have been averted, since the uncontroverted testimony showed that the automobile, at the speed it was going, could have been quickly stopped; that all three of its occupants, both before and after reaching the 40-foot distance from the track, were listening for the train, with every indication that they could and would have heard the warning. We conclude that the trial court did not err in refusing the requested peremptory instruction and submitting the cause to the jury. Railway v. Harrington (Tex. Com. App.) 235 S. W. 188; Trochta v. Railway (Tex. Civ. App.) 218 S. W. 1039, 1040, addendum by Supreme Court; Hines v. Messer (Tex. Civ. App.) 218 S. W. 612 (1); Hines v. Arrant (Tex. Civ. App.) 225 S. W. 768; Lee v. Railway, 89 Tex. 588, 36 S. W. 63.

[3] It is next argued that the jury's answer to issue No. 14—that is, that appellee in approaching the crossing exercised the degree of care to discover the approach of the train and avoid contact therewith that a man of ordinary prudence would have used under the same or similar circumstances—is not only contrary to and without support in the evidence, but conflicts with previous findings 4 to 11, inclusive. The first of this suggestion but amounts, through the net effect of the several propositions presenting it, to affirming over again that the evidence showed appellee to have been guilty of contributory negligence; to that extent it does not call for a second disposition here of that question. As to the claim of conflict, we think there is none. Our statute on the subject (Rev. St. art. 1985) requires the jury to "find the facts established by the evidence, and not the evidence by which they are established," and each of the findings referred to, except the one in response to the general and essentially hypothetical inquiry involved in issue No. 6, merely went to evidentiary matters. This issue, when standing by itself, excluded alleged facts necessary to make the inquiry concretely applicable to the case in hand—that is, the failure to blow the whistle and ring the bell for the crossing—and so left the jury determining, in effect, that there was a point south of the railway track from which persons generally in traveling along the road could by the exercise of ordinary care ascertain whether a train was approaching from the east in time to avoid a collision with it. But this was not the test applicable to the conduct of the appellee, which was whether, in the particular circumstances confronting him, he failed to exercise ordinary care to discover the approach of the train, or failed to act as a person of ordinary prudence would have under those conditions. Railway v. Wilkerson (Tex. Civ. App.) 224 S. W. 579 (5–7) Hines v. Richardson (Tex. Civ. App.) 232 S. W. 889; Railway Co. v. Harrington (Tex. Com. App.) 235 S. W. 188 (5). The answers made to issues 13 and 14 directly acquitted him of any such shortcoming, and together with those under issues 1, 2, and 3 really entitled him to a judgment.

[4] Assignments 4 to 7, inclusive, complain of the refusal of special charges Nos. 2, 8, 6, and 5, requested by appellant. We think none of these rulings involve reversible error. The effect of the first of these charges was to impose a higher degree of care upon the appellee than the law required; the second was erroneous in forbidding the jury to take into consideration the fact that appellee was not required to anticipate that the duty of blowing the whistle and ringing the bell for the crossing would go unperformed; the third was based upon hypotheses that the specific findings of the jury otherwise negatived, thereby rendering it legally insignificant; and the fourth is not only subject to the same objections as those suggested to the two preceding ones, but is further disposed of by the finding, above made, that no time intervened between the discovery of the train and the collision for any of the occupants of the automobile to do other than try to save himself.

[5] Through his eighth, ninth, and tenth assignments, appellant earnestly insists that the court erred in refusing to give his special charge No. 3, reading as follows:

"You are instructed that, if you believe from the evidence that the whistle of the engine was sounded at a distance of more than 80 rods from the crossing where the collision occurred, and that such point at which the whistle was so sounded was so situated as that said whistle so sounded at such point could be heard at and in the vicinity of said crossing, and was sufficient to constitute a warning to those about to use the crossing of the approach of the train, you will, in your findings under issue No. 1, find that the whistle was sounded at least 80 rods from the public road crossing where the collision occurred."

Abstractly, we find no fault with this statement of the law, but in our opinion it did not fit the case made by the pleadings and developed by the evidence in this instance. Appellee pleaded as a ground of action failure of the employés in charge of the train to give the signals by bell and whistle required by the statute for the Peach Creek crossing at which the collision occurred, and that such failure was a proximate cause of his injury. Appellant answered these allegations by a general denial only. Appellee directed his evidence to showing the signals were not given as alleged by him for that crossing, and defendant directed his evidence toward showing that the signals were given for that crossing. His employés operating the train testified, in contradiction to the direct statements of appellee's witnesses that

such signals were not given, that they were. The issue was thus joined by both pleading and proof as affecting the Peach Creek crossing only, and the jury in answer to appropriate special issues found that no such signals were given, and that the failure to give them constituted a proximate cause of appellee's injuries. We think this disposed of the only issue in the case in relation to that matter.

This special charge, however, was predicated upon the fact that one of appellee's witnesses, Parker, upon cross-examination, incidentally testified that he heard the train whistle for another or second public road crossing, half a mile to the east of the Peach Creek crossing, and that when it so whistled, it was about a quarter of a mile east of this second crossing, making it three-fourths of a mile east of the Peach Creek crossing; that there was such a whistle for this second crossing was confirmed by appellant's witness Ashworth, engineer of the train. In this state of the record, we think the charge related to an irrelevant issue, and that its refusal did not constitute error. It is evident, we think, that the matter was an afterthought with appellant, and that, in the circumstances, the sounding of a whistle for another crossing should not be regarded as a compliance with appellant's statutory duty in that regard toward the appellee, who intended to use the Peach Creek crossing only; especially does this consideration seem controlling when it is recalled that the uncontroverted evidence showed that at the time of this whistle for the second crossing the train, running 35 miles an hour, was three-fourths of a mile, or 1,320 yards, from the crossing at which the collision occurred, and that the automobile, by estimate, was then about 940 yards away from it in an opposite direction, making the train and the automobile at the time about 2,260 yards, or nearly a mile and a half, apart. The assignments are overruled.

What has been said disposes of the merits of the appeal. Assignments not specifically discussed have been carefully considered, but none of them are thought to be well taken. The judgment has accordingly been affirmed.

Affirmed.

LANE, J. (dissenting). The collision causing the injury of appellee was at a point where a public road crosses the railway track of the Galveston, Harrisburg & San Antonio Railway Company. This crossing is known as the Peach Creek crossing. One-half mile east of the Peach Creek crossing the public road again crosses the railway track. Between these two crossings there is a trestle spanning some low land or creek. The whistling post for the most eastern crossing, a half mile east of the Peach Creek crossing, is one-fourth of a mile east there-

from. The engine which struck the automobile in which appellee and his companions were riding at the time of the collision was pulling a fast passenger train, approaching the two crossings from the east at a rate of speed of 35 miles an hour.

As grounds of negligence, among others not submitted to the jury, the plaintiff alleged as follows:

"The agents and employés in charge of said train approached the said crossing without blowing the whistle and ringing the bell at a distance of at least 80 rods from said public road and highway, and without keeping the bell ringing until the said crossing was passed"

—and not as for such crossing, as stated in the majority opinion. Appellant answered the allegation to the effect that its employés had failed to ring the bell and sound the whistle at least 80 rods from Peach Creek crossing (not for said crossing), by general denial. The case was submitted upon special issues, and the only grounds of negligence submitted were:

"Did those in charge of the locomotive fail to sound the whistle thereon at a distance of at least 80 rods (440 yards) from the public crossing, and fail at such distance to commence ringing and to continue to ring the bell thereon until just before the collision occurred?"

Herbert Parker, witness for the plaintiff, testified positively, and not incidentally only, as stated in the majority opinion, that he was near the Peach Creek crossing, waiting for the train to pass, and that he heard the whistle sounded at or near the whistling post set for the east crossing, the same being 440 yards east therefrom. This testimony of Parker is not disputed by any witness. The men in charge of the locomotive both testified that the whistle and bell were sounded for both crossings. Witnesses Wiley Hassell and his wife, and Frank Smith and his wife, testified that they heard the whistle blown after it passed the east crossing and near the east end of the trestle, which was shown to be about 400 or 500 yards from the Peach Creek crossing. Two witnesses by the name of Ray testified that they were at their store, near the Peach Creek crossing, and that no whistle was sounded or bell rung for said crossing. Two of the occupants of the automobile testified that they did not hear any whistle or bell.

Appellant, contending that the provisions of the statute requiring that the whistle of an engine approaching a public road crossing shall be sounded at least 80 rods distant from such crossing is fully complied with if the whistle is sounded more than 80 rods from the crossing and at such distance therefrom as to be reasonably calculated to constitute a sufficient warning to persons about to use the crossing of the approach of the train, notwithstanding there may be an in-

tervening crossing, requested the court to charge the jury as follows:

"You are instructed that, if you believe from the evidence that the whistle of the engine was sounded at a distance of more than 80 rods from the crossing where the collision occurred, and that such point at which the whistle was so sounded was so situated as that said whistle so sounded at such point could be heard at and in vicinity of said crossing, and was sufficient to constitute a warning to those about to use the crossing of the approach of the train, you will, in your findings under issue No. 1, find that the whistle was sounded at least 80 rods from the public road crossing where the collision occurred."

Issue No. 1, referred to in the foregoing requested charge, reads as follows:

"Did those in charge of the locomotive fail to sound the whistle thereon a distance of at least 80 rods (440 yards) from the public crossing, and fail at such distance to commence ringing and continue to ring the bell thereon until just before the collision occurred?"

Appellee now contends, in effect, and we presume he did so in the trial court, that appellant was not entitled to the requested charge, even if it should be conceded that the whistle was blown for the crossing east of the Peach Creek crossing, as testified to by the witness Parker, and if it be further conceded that the point at which it was blown was at least 80 rods from said Peach Creek crossing, and could be heard at and in the vicinity of said crossing, and by those about to use the same, still appellant was not entitled to have the requested charge given, for the reason that such sounding of the whistle was for another crossing, and not for the Peach Creek crossing, where the collision occurred, and because proof of the whistling for the east crossing was not admissible, because not in rebuttal of plaintiff's allegations of failure to give signals for the Peach Creek crossing, in that such proof was an attempt to avoid the effect of the plaintiff's allegations, and in order to do so it was incumbent upon the defendant to plead affirmatively that the whistle was blown for the crossing to the east of the Peach Creek crossing. The court refused to submit the requested charge, and appellant has assigned such refusal as reversible error.

I agree with appellant's contention, and therefore dissent from the opinion of the majority in affirming the judgment of the trial court. To recover for negligence for failure to sound the whistle for a crossing, it is incumbent upon the plaintiff, not only to plead, but to show affirmatively, that the whistle was not sounded at a distance of at least 80 rods of such crossing, and negative testimony of the occupants of the automobile, struck at such crossing, that they did not hear the whistle as the train approached, is insufficient to sustain a finding that the whistle was not blown for the crossing at the proper distance therefrom. Schaff v. Bearden (Tex. Civ. App.) 211 S. W. 503. The majority of this court, as is apparent from the majority opinion, adopted the contention of the plaintiff that it was incumbent upon the defendant to do more than enter its general denial to the plaintiff's allegation that the whistle was not blown as required by the statutes, and that to entitle defendant to prove that the point at which the whistle was sounded east of the crossing situated one-half mile east of the Peach Creek crossing was at least 80 rods from the crossing where the accident occurred, and so near thereto as would reasonably give warning to those about to use such crossing of the approach of the train, it was necessary for it (the defendant) to affirmatively allege such facts in its answer.

I am unable to discuss such contention or holding further than to say that, in view of the numerous decisions of our courts that a general denial on the part of the defendant in such case casts the burden upon the plaintiff, not only to plead negligence, but to affirmatively prove the same, such proposition is to my mind an absurdity. The majority opinion, in effect, holds that if the whistle was sounded at a point at least 80 rods from the crossing where the accident occurred, and that even if such sounding was sufficient to give warning to those about to use such crossing of the approach of the train, still it did not meet the requirements of the law, because there was another crossing lying between the point of the whistling and the crossing where the accident occurred. Such a holding, to my mind, if finally established, would indeed be the establishment of a dangerous rule, in direct conflict with the wording of the statute on the subject. Suppose it be admitted that the whistle was blown at the point east of the east crossing, and that it was at a distance at least 80 rods from the crossing where the accident occurred, and that it was sufficiently near to such crossing to give warning to those about to use the same of the approach of the train, could it be reasonably said that because of the intervening crossing such sounding of the whistle did not meet the demands of the law? I think not. In support of my contentions I quote from the following decisions:

I. & G. N. Ry. Co. v. Ives, 31 Tex. Civ. App. 272, 71 S. W. 772:

"The meaning of this provision, as stated by our Supreme Court, is 'that, in order to comply with the statute, the whistle must be blown at some point sufficiently near the crossing to be reasonably calculated to give warning to persons about to use the same; such point not to be nearer to such crossing than 80 rods.' Railway v. O'Neal, 91 Texas, 671, 47 S. W. 95."

Edwards v. Railway Co., 105 Tex. 404, 151 S. W. 289:

# 790      242 SOUTHWESTERN REPORTER      (Tex.

"But it is claimed that the farm crossing at which the whistle was sounded was more than 80 rods from the public crossing. The statute quoted above requires that the whistle must be sounded 'at least' eighty rods, and, being sounded in obedience to that law, it was necessary and usual. It need not have been blown at any particular distance from the crossing, if not less than 80 rods and at such point as would give notice of the train's approach to persons who might be near to and intending to use the public crossing."

There are many other decisions which may be cited to the same effect as those quoted from, but it is unnecessary to cite them. For the reasons hereinbefore stated, I think the defendant's special charge should have been given, and that the refusal of the court to give it constitutes reversible error.

By appellee's third counter proposition it is admitted that the undisputed evidence shows that the whistle was sounded for the east crossing at a point three-fourths of a mile, or 1,320 yards, from the crossing at which the accident occurred, and that the automobile was approaching the crossing, in an opposite direction from the train's approach, at a rate of speed of 25 miles an hour, thus placing the automobile 940 yards west of the crossing and 2,260 yards from the train at the time the whistle was sounded. It was insisted that these facts show as a matter of law that sounding the whistle under such circumstances could not constitute the warning of the approach of the train to the crossing required by the statute, and for this reason the requested charge was properly refused. It is evident that the majority of this court adopted the foregoing contention, for in their opinion they say:

"In this state of the record, we think the charge related to an irrelevant issue, and that its refusal did not constitute error. It is evident, we think, that the matter was an afterthought with appellant, and that, in the circumstances, the sounding of a whistle for another crossing should not be regarded as a compliance with appellant's statutory duty in that regard toward appellee, who intended to use the Peach Creek crossing only; especially does this consideration seem controlling when it is recalled that the uncontroverted evidence showed that at the time of this whistle for the second crossing the train, running 35 miles an hour, was three-fourths of a mile, or 1,320 yards, from the crossing at which the collision occurred, and that the automobile, by estimate, was then about 940 yards away from it in an opposite direction, making the train and the automobile at the time about 2,260 yards, or nearly a mile and a half, apart."

This holding of the majority is, in effect, a holding that, even if the sounding of the whistle at the point at which it was sounded under ordinary circumstances would have met the requirements of the law, it did not do so under the facts shown. The effect of such holding is that those in charge of the locomotive must, in sounding the whistle, contemplate that an automobile may be approaching the crossing at a rate of speed of 25 miles, or even 50 miles, an hour, and in sounding the whistle be governed thereby. To this holding I cannot agree. Just as well say that they should contemplate that the automobile was running with its cut-out open and was making an unusual noise, which would prevent its occupants from hearing the whistle and should be governed thereby, though under ordinary circumstances such whistling would have met the demands of the law.

If it should be shown that a train, either freight or passenger, was approaching a public road crossing at a rate of speed of, say 15 miles an hour, and that the whistle was sounded at a distance of only 600 yards from such crossing, could it be reasonably said that a jury would not be justified in finding that the law with reference to sounding of the whistle had been complied with, notwithstanding that at the time said whistle was sounded an automobile was approaching said crossing from an opposite direction at a rate of speed of 40 miles an hour, which, as a consequence, would place said automobile about 2,000 yards from the crossing at such time, and 2,600 yards from the train? Could it be held that under such circumstances the trainmen should take knowledge of the approach of the automobile and its speed, and that a failure to do so would have the effect to make the signals required by law of no effect? I think not. Yet the appellee contends, and the majority opinion sustains, just such propositions. In other words, the majority in effect holds that, although the jury might have properly found, if the requested charge of appellant had been given, that under ordinary and usual circumstances and conditions the law would have been complied with by the sounding of the whistle at the place where it was sounded, still, as the automobile was down the road 940 yards from the crossing, running at a speed of 25 miles an hour, a fact unknown to the operatives of the train, such sounding of the whistle, otherwise sufficient to meet the demands of the law, was as a matter of law insufficient.

I am firmly of the opinion that whether the whistle, conceded to have been sounded for the east crossing, was at a point at least 80 rods from the crossing where the collision occurred, and whether such whistle could have been heard at such crossing by those about to cross over the same, were questions for the jury, and that the court erred in refusing to submit those questions to the jury when requested to do so by appellant. For the reasons pointed out, I respectfully enter my dissent.

### On Motion for Rehearing.

GRAVES, J. Appellant's motion for rehearing has been given careful consideration, but we are unconvinced of error in the original disposition, and therefore overrule it.

Indebtedness to it, however, for directing attention to two slight inaccuracies in the former opinion, is acknowledged, and opportunity is here taken to make correction. On page 786 the reference to the view of the railway track to the east as being unobstructed after the 40-foot zone was reached should have read "for at least a quarter of a mile," instead of "for perhaps a quarter of a mile;" on page 786, the recitations concerning the "aisle or opening" beyond the bois d'arc bush were not meant to be a finding of fact that there was an actual aisle, in the sense of an opening about 3 feet wide between opposite walls of timber on either side running from the public road to the railroad track or right of way, but that at the 60-foot distance the disposition toward each other of the bois d'arc bush, the nearest building to it, and the adjacent trees was such that one approaching the railroad along the highway in a moving automobile would have his view restricted to a narrow opening, which would only enable him to see a small part of the track where his line of vision struck it east of the crossing; that is clearly the meaning and effect of the testimony of the witness Hawes about the matter, and no other mentioned it.

Motion overruled.